# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**UNITED STATES OF AMERICA**

**v.**                                        **Case No.  8:03-cr-77-T-30TBM**

**SAMI AMIN AL-ARIAN,** *et al.*
_____

# ORDER

This cause came on for consideration without oral argument upon the following:

> (1) Defendant Ballut's Motion to Suppress FISA Intercept Evidence (Dkt. #781);

> (2) Defendant Al-Arian's Motion to Suppress FISA Evidence (Dkt. #785);

> (3) Defendant Al-Arian's Motion to Compel FISA Documents (Dkt. #786);

> (4) Defendant Fariz's Motion for Disclosure of FISA Materials and to Suppress FISA Surveillance (Dkt. #798); and

> (5) two responses (Dkt. ##844, 845) filed by the Government in opposition to the Defendants' motions.[1]

Defendants are charged with numerous crimes, including participation in a criminal enterprise to provide material support to the Palestinian Islamic Jihad ("PIJ"), an alleged terrorist group conducting terrorist activities in the Middle East.  Defendants have moved to compel materials related to electronic surveillance orders issued  by the Foreign Intelligence Surveillance Court

---

[1]  The Government filed a classified and unclassified version of one of its responses to the Defendants' Motions because the response contained information obtained during electronic surveillances that has been deemed pertinent to the national security interests of the United States.  The Government's other response addressed the Defendants' constitutional challenges to the Foreign Intelligence Surveillance Act, 50 U.S.C. §§1801, *et seq.*

("FISC") pursuant to the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. §§1801, *et seq*. These materials were filed by the Government *ex parte* and *in camera*, in accordance with section 1806(f) of FISA in order for this Court to determine the legality of the FISA surveillance. Defendants have also moved to suppress any evidence the Government intends to use at trial that was obtained during all applicable FISA surveillance operations.[2]

## I. FISA

A summary description of FISA was aptly articulated by the Second Circuit in <u>United States v. Duggan</u>, 743 F.2d 59 (2d Cir. 1984).  To conserve judicial labor, the section of the Second Circuit's opinion in <u>Duggan</u> describing the principal features of FISA is cited in its entirety below:

> Enacted in 1978, FISA generally allows a federal officer, if authorized by the President of the United States acting through the Attorney General (or the Acting Attorney General or the Deputy Attorney General) of the United States, to obtain from a judge of the specially created FISA Court, see 50 U.S.C. § 1803, an order "approving electronic surveillance of a foreign power or an agent of a foreign power for the purpose of obtaining foreign intelligence information." Id. § 1802(b).

> FISA contains several definitions of "foreign power" and "agent of a foreign power." Most pertinently to this case, FISA defines "foreign power" to include "a group engaged in international terrorism or activities in preparation therefor." Id. § 1801(a)(4). An "agent of a foreign power" is defined to include both "any person other than a United States person, who . . . acts in the United States as . . . a member of a foreign power as defined in [§ 1801(a)(4)]," id. § 1801(b)(1)(A), and "any person who . . . knowingly engages in . . . international terrorism, or activities that are in preparation therefor, for or on behalf of a foreign power," id. § 1801(b)(2)(c). Section 1801(I) defines "United States person" to include a citizen of the United States, an alien lawfully admitted for permanent residence (as defined in section 1101 (a)(20) of title 8), [and] an unincorporated association a substantial number of members of which are citizens of the United States or aliens lawfully admitted for permanent residence.

---

[2] The Government intends to use evidence in this case that was obtained during the electronic surveillance of Defendants Al-Arian, Hammoudeh, and Fariz, as well as electronic surveillance of other individuals not named as defendants in this case.  Each Defendant is authorized to challenge the legality of FISA surveillance and may move to compel FISA materials filed *ex parte* and *in camera* if he was either a target of the surveillance or if "his communications or activities were subject to electronic surveillance."  <u>See</u> 50 U.S.C. §§1806(e) and 1801(k).

The Act defines "foreign intelligence information," in part, as "(1) information that relates to, and if concerning a United States person is necessary to, the ability of the United States to protect against --. . .(B) sabotage or international terrorism by a foreign power or an agent of a foreign power; or . . .(2) information with respect to a foreign power or foreign territory that relates to, and if concerning a United States person is necessary to -- (A) the national defense or security of the United States; or (B) the conduct of the foreign affairs of the United States. Id. § 1801(e).  "International terrorism" is defined to include activities that -- (1) involve violent acts or acts dangerous to human life that . . . would be a criminal violation if committed within the jurisdiction of the United States or any State; (2) appear to be intended -- (A) to intimidate or coerce a civilian population;(B) to influence the policy of a government by intimidation or coercion; or (c) to affect the conduct of a government by assassination or kidnapping; and 3) occur totally outside the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to coerce or intimidate, or the locale in which their perpetrators operate or seek asylum.  Id. § 1801(c).

A federal officer making application for a FISA order approving electronic surveillance must include in his application, inter alia, "the identity, if known, or a description of the target of the electronic surveillance," id. § 1804(a)(3); "a statement of the facts and circumstances relied upon by the applicant to justify his belief that . . . the target of the electronic surveillance is a foreign power or an agent of a foreign power," id. § 1804(a)(4); and a certification by the Assistant to the President for National Security Affairs, or an executive branch designee of the President that, inter alia, the certifying official deems the information sought to be foreign intelligence information and that the purpose of the surveillance is to obtain foreign intelligence information, together with a statement of the basis for the certification that the information sought is the type of foreign intelligence information designated. Id. § 1804(a)(7).  When the target is a United States person, the government is required to minimize the acquisition and retention of nonpublic available information and to prohibit its dissemination, consistent with the need of the United States to obtain, produce, and disseminate foreign intelligence information, id. § 1801(h); and the application must set out what minimization procedures are proposed, id. § 1804(a)(5).

The FISA Judge is authorized to enter an order approving electronic surveillance if he finds, inter alia, that on the basis of the facts submitted by the applicant there is probable cause to believe that -- (A) the target of the electronic surveillance is a foreign power or an agent of a foreign power: Provided, that no United States person may be considered a foreign power or an agent of a foreign power solely upon the basis of activities protected by the first amendment to the Constitution of the United States, id. § 1805(a)(3), and finds that the applying official has obtained the requisite authorization and has submitted the required information, id. §§ 1805(a)(1), (2) and (5).  If the target is a United States person, the FISA Judge is not to approve surveillance unless he finds that the certifications submitted pursuant to § 1804(a)(7)(E) are not clearly erroneous on the basis of the data before him. Id. § 1805(a)(5).

Duggan, 743 F.2d at 69-71.  FISA was amended after the Second Circuit's opinion in Duggan by

the USA Patriot Act, Pub. L. No. 107-56, 115 Stat. 272 (Oct. 26, 2001) (the "Patriot Act").  The Patriot Act broadened the circumstances under which electronic surveillance under FISA could be conducted by amending section 1804(a)(7)(B) and 1823(a)(7)(B) to permit surveillance when a "significant purpose," as opposed to "the purpose," of the surveillance was to acquire foreign intelligence information.  Id.

## II.  Motions to Compel

Defendants ask this Court to compel the disclosure of all materials related to the FISA surveillance operations yielding evidence intended to by used by the Government at trial, including the applications filed in support of the surveillance and the orders that were issued by the FISC.  The Government submitted these FISA materials to the Court for an *ex parte, in camera* examination pursuant to the procedures set forth in 50 U.S.C. §1806(f).   This section of FISA requires a district court to "review in camera and ex parte the application, order, and such other materials relating to the surveillance as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted" when the "Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States." 50 U.S.C. §1806(f).   In this case, the Attorney General filed such a "Claim of Privilege"and the Assistant Director of the Counterterrorism Division of the Federal Bureau of Investigation filed "classified declarations" in support of the Attorney General's claim of privilege. This court, therefore, may disclose these materials to the Defendants "only where such disclosure is necessary to make an accurate determination of the legality of the surveillance."  50 U.S.C. §1806(f).

Defendants argue that the provisions of FISA, the due process clause of the Fifth Amendment, and their right to effective assistance of counsel under the Sixth Amendment require

disclosure of these materials.  Defendants' contention that the FISA statute demands disclosure of these materials is unavailing.  This Court has determined from its review of the FISA materials that the legality of the surveillance can be determined without assistance from Defendants.  Accordingly, their argument for disclosure based on the terms of the FISA is denied.

Defendants contend in the alternative that their constitutional rights to due process and to effective assistance of counsel will be violated if the Court proceeds to examine the FISA materials *ex parte* and *in camera*.  Similar constitutional challenges to FISA's disclosure procedures have been addressed and routinely rejected by numerous federal courts.  See United States v. Damrah, No. 04-4216, 2005 U.S. App. LEXIS 4340 (6th Cir. March 15, 2005); United States v. Ott, 827 F.2d 473, 476-477 (9th Cir. 1987) (defendant's due process rights were not violated by district court's *ex parte, in camera* review of FISA materials, regardless of high security clearances procured by defense counsel); United States v. Belfield, 692 F.2d 141, 148 (D.C. Cir. 1982) (excluding defendants from the process used to determine the legality of the FISA surveillance does not "rise[ ]to the level of a constitutional violation"); United States v. Bin Laden, 126 F. Supp. 2d 264, 286-287 (S.D.N.Y. 2000); United States v. Nicholson, 955 F. Supp. 588, 592 (E.D. Va. 1997) ("FISA does not violate the Fifth or Sixth Amendments by authorizing ex parte in camera review")(citing Belfield); In the Matter of Kevork, 634 F. Supp. 1002, 1009 (C.D. Cal. 1985), aff'd 788 F.2d 566 (9th Cir. 1986); United States v. Megahey, 553 F. Supp. 1180, 1193-1194 (E.D. N.Y. 1982), aff'd mem., 729 F.2d 1444 (2d Cir. 1983), aff'd sub nom, United States v. Duggan, 743 F.2d 59 (2d Cir. 1984).  Cases decided before passage of FISA also established the constitutional propriety of an *ex parte, in camera* review procedure for determining the lawfulness of  foreign intelligence surveillance operations.  See e.g., United States v. Brown, 484 F.2d 418, 425-427 (5th Cir. 1973)

(holding that the disclosure of foreign intelligence wiretaps was not required after the in camera examination demonstrated the wiretaps to be lawful), cert. denied, 415 U.S. 960 (1974); see also United States v. Ajlouny, 629 F.2d 830, 839 (2d Cir. 1980), cert. denied, 449 U.S. 1111 (1981); United States v. Butenko, 494 F.2d 593, 607 (3rd.Cir. 1974) (holding that "the legality of foreign intelligence surveillance should be determined on an in camera, ex parte basis"), cert. denied 419 U.S. 881.

As previous courts have recognized, the procedures set forth in FISA strike an appropriate balance between protecting the national security interests of the United States and preserving constitutional principles such as a defendant's rights to due process and effective assistance of counsel. Defendants' constitutional arguments in support of their motions to compel, therefore, are also denied.

## II.  Motions to Suppress

Defendants have argued on statutory and constitutional grounds that the fruits of the FISA surveillance which the Government intends to use in this case should be suppressed. Many of Defendants' arguments are based on specific provisions within sections 1804, 1805, and 1806 of FISA. Defendants have also asserted a general argument that the Government failed to comply with the provisions of FISA.[3] Setting aside momentarily Defendants' specific challenges to the electronic surveillance, this Court concludes from its review of the FISA materials that the Government conducted the electronic surveillance in accordance with FISA. There appear to have been certain

---

[3] Defendant Ballut also asserted that the FISA surveillance may have violated 50 U.S.C. §1802 if it was conducted without an order from the FISC because communications from U.S. persons were acquired. All of the evidence the Government intends to use in this case, however, was derived from electronic surveillance authorized by order of the FISC. This argument, therefore, is denied.

instances, however, where time gaps existed between the successive  surveillance periods of Defendants Al-Arian and Hammoudeh, suggesting that the surveillance may have extended beyond the time limitation period set forth in section 1805(e).  This section limits electronic surveillance under FISA from ninety days to one year depending on the target of the surveillance.

It is not entirely clear from the submitted FISA materials whether electronic surveillance, in fact, was conducted during these time gaps or whether the counterintelligence agents conducting the surveillance simply ceased their operations until a successive order was issued by the FISC.  On one occasion, it appears likely that counterintelligence agents conducting surveillance of Defendant Al-Arian exceeded the limitation period because the applicable FISC order authorizing the ninety-day period of surveillance was issued on August 25, 1994, and reference was made in subsequent applications to a communication by Defendant Al-Arian that was transmitted on January 2, 1995. The immediately succeeding FISA order authorizing continued surveillance of Defendant Al-Arian was not issued until January 10, 1995.  This communication, therefore, would appear to have been transmitted during a time gap, although this conclusion is not free from doubt because the subsequent FISA applications which reference the communication do not identify which FISA surveillance operation actually recorded it.

The appropriate remedy under these circumstances would be to suppress any communications acquired during these time gaps.[4]  Accordingly, any communications recorded during electronic surveillance targeting Defendant Al-Arian between (a) November 22, 1994, and

---

[4]  Defendants would be entitled to additional relief if the unauthorized recording of communications during these gap periods formed the basis of any of the FISC's probable cause determinations.  Having concluded that the FISC's probable cause determinations were not affected by reports of any such communications, only suppression of the unauthorized surveillance is warranted.

January 10, 1995, (b) January 22, 1997, and March 3, 1997, (c) November 12, 1997, and November 20, 1997, (d) February 17, 1998 and April 10, 1998, (e) December 30, 1998 and June 22, 1999, and (f) September 19, 1999 and February 3, 2000, are suppressed.  Likewise, communications obtained during unauthorized electronic surveillance targeting Defendant Hammoudeh between October 30, 2000, and December 29, 2000, and between March 28, 2001 and April 19, 2002 are suppressed.

Turning to the specific challenges asserted in the Defendants' Motions, Defendants have challenged on probable cause grounds the FISC orders authorizing the FISA surveillance operations. Defendants contend that a FISA application can not establish probable cause that the target of the surveillance was an "agent of a foreign power" based solely on First Amendment activities. Defendant Fariz separately contends that the FISA applications seeking surveillance of his communications must have established probable cause that he intended to further the terrorist activities of a foreign power, rather than merely demonstrating that he supported the activities of a foreign power generally.[5]

This Court agrees with these contentions.  The FISA statute specifically provides that "no United States person may be considered a foreign power or an agent of a foreign power solely upon the basis of activities protected by the first amendment to the Constitution of the United States." 50 U.S.C. §1805(a)(3)(A).  Moreover, the definition of "agent of a foreign power" in the FISA statute

---

[5]  Several of Defendant Ballut's arguments are based on the mistaken belief that FISA requires the government to prove that all persons whose communications are recorded during a FISA surveillance operation are agents of a foreign power.  While FISA permits any "aggrieved person" the opportunity to challenge the legality of the surveillance, the statute only requires the Government to prove that the target of the surveillance is an agent of a foreign power.  See 50 U.S.C. § 1805(a)(3)(A) (there must be "probable cause to believe that the target of the electronic surveillance is a foreign power or agent of a foreign power); see also Duggan, 743 F.2d at 79.  Defendant Ballut's arguments based on probable cause are accordingly denied.

requires knowledge that one's activities are in furtherance of "international terrorism" conducted by the foreign power.  50 U.S.C. §§1801(b)(2)(c) and (E).

This Court scrutinized each FISA application that was filed by the Government to determine whether probable cause supported the claim that the target of the surveillance was an "agent of a foreign power."  In making its assessment, this Court was mindful that a target's exercise of his First Amendment rights alone could not form the basis of the FISC's  probable cause determination.

Many of the FISA applications describing the target as an agent of a foreign power were lackluster.  Portions of the evidence in many of the applications were summarized in a narrative fashion, thereby preventing this Court from determining the source of the information.  Many of the FISA applications also relied, in part, on unidentified sources whose basis of knowledge and reliability could not be assessed.  Additionally, certain applications referenced intelligence agencies from other countries as the source of information, but how the agency obtained the information it reported to the United States was not explained.

Notwithstanding these deficiencies, this Court has concluded that each of the applications established probable cause under the "totality-of-the-circumstances" test established in Illinois v. Gates, 462 U.S. 213, 236 (1983).  Each application contained evidence from multiple sources, and these sources provided separate, consistent, and in many cases, corroborative details to support the applicant's belief that the target was an agent of a foreign power.  Moreover, none of the applications relied solely on a targets' protected constitutional rights to support the FISC's probable cause determination.  Accordingly, this Court upholds the FISC's probable cause determinations that the target of each FISA application was an "agent of a foreign power" as defined in 50 U.S.C.

§1801(b).[6]      Defendants have also argued that the FISA applications may have contained material

misrepresentations or omissions undermining the FISC's probable cause determinations.  Citing to

Franks v. Delaware, 438 U.S. 154 (1978), Defendants contend that a hearing should be held so that

they may prove that the affidavits contained "intentionally or recklessly made materially false

statements and omitted material information from the FISA applications."   In the alternative,

Defendants contend that all FISA evidence should be suppressed if the FISA applications contain

material misrepresentations or omissions.

       This Court has already determined that disclosure of the FISA materials to the Defendants

is not necessary to determine the legality of the surveillance and, therefore, disclosure is prohibited

by section 1806(f) of FISA.  Applying the principles announced in Franks to classified FISA

applications filed *ex parte* and *in camera*, however,  presents obvious difficulties for a defendant

who must come forth with an "offer of proof" before overcoming the presumption of validity

attributed to such applications and being entitled to an evidentiary hearing.  See Franks, 438 U.S.

at 155-156, 171.  In Duggan, the Second Circuit indicated in dicta that the principles established in

Franks are just as applicable to applications for FISA surveillance as they are to affidavits for search

warrants, but it did not address the difficulties in applying these principles in circumstances where

a defendant does not have access to the FISA applications because they were filed *ex parte* and *in

camera*.  It simply held that the defendants in that case failed to make a "substantial preliminary

showing" that the certification under 50 U.S.C. §1804(a)(7) was false.  See Duggan 743 F.2d at 77

---

       [6] Because this Court has upheld the FISC's probable cause determination for each FISA
application, it does not need to address the Government's argument that the good faith exception to the
exclusionary rule articulated in United States v. Leon, 468 U.S. 897 (1984) applies in the FISA context.

n.6.

This Court's ability to ferret out potential material misrepresentations and omissions during its review of the FISA applications was undoubtedly limited. Close attention was paid, however, to the information in each application to make sure that it was consistent with subsequent applications and with the information contained in the five search warrant applications related to this case. During its review of the FISA applications, this Court also considered the alleged material misrepresentations and omissions that Defendant Fariz identified in his Motion and in his previously filed motion to suppress evidence obtained during the search of his home and office in 2003. These alleged misrepresentations and omissions related to reports that Defendant Fariz was communicating with co-defendant Awda on matters related to the PIJ after Awda had already left the PIJ to work for the Palestinian Authority.

This Court's review of the FISA materials revealed a relatively small number of inconsistencies among the FISA applications,[7] and only one inconsistency that potentially could have affected the FISC's decision to authorize the electronic surveillance. This inconsistency related to a target[8] who is neither a defendant nor an unindicted co-conspirator in this case. Correction of this inconsistent information would have potentially altered the approved date of the electronic surveillance, but not the issuance of the FISA order because the information was unrelated to the target's status as an agent of a foreign power. This Court was unable to locate any FISA

---

[7] While some of these inconsistencies were found through the Court's own efforts, the majority were explicitly identified in the FISA applications by the applicant.

[8] Because the identity of this target remains classified, the target's identity and the inconsistent information is revealed in this footnote in the sealed version of this Order. No difference between the sealed and unsealed version of this Order exists other than this footnote.

applications that referenced communications acquired during this potentially unauthorized period of surveillance.  To the extent the Government has in its possession and intends to use at trial evidence obtained during the surveillance of this target between June 26, 1995, and August 8, 1995, this evidence is hereby suppressed.

This Court did not find any material inconsistencies between the information in the FISA applications and the information in the search warrant applications.  As for the alleged misrepresentations identified by Defendant Fariz in his Motion, this Court located FISA applications that discussed the individual previously misidentified as co-defendant Awda.  The application did not suggest, however, that this individual was, in fact, Awda.  Moreover, none of the FISA applications discussed any communications between Defendant Fariz and co-defendant Awda. Having found no other material misrepresentations or omissions, Defendants' arguments that an evidentiary hearing should be held or, alternatively, that all FISA evidence be suppressed are denied.

Next, Defendants submit several arguments related to the minimization procedures established in FISA that restrict the use of information acquired during the electronic surveillance. First, they contend that the minimization procedures in the FISA materials may not have satisfied the statutory definition set forth in 50 U.S.C. §1801(h).  Second, they argue that the Government failed to comply with the minimization procedures because the foreign counterintelligence agents conducting the surveillance disseminated to law enforcement officials information having nothing to do with foreign intelligence or criminal activity.  Third, they submit that their constitutionally protected due process rights may have been violated if the government was not required to preserve exculpatory evidence obtained during the surveillance.

This Court has determined from its review of the FISA materials that both the FISA applications and the accompanying FISA orders satisfied the definition of minimization procedures set forth in the statute.  Moreover, the Government complied with the minimization procedures set forth in each FISA order by not logging, summarizing, or indexing those recorded conversations that did not appear relevant to the foreign intelligence investigation or to any criminal activity.  Contrary to Defendants' arguments, the retention and dissemination of information to law enforcement that was unrelated to foreign intelligence or criminal activity was appropriate.

The minimization procedures set forth in each FISA order provided that "tapes containing evidence of a criminal offense. . . [or] communications that reasonably appear to be exculpatory ("Brady") material shall be retained. . . ."  Thus, the government was authorized to retain tapes that contained evidence of a crime or exculpatory material no matter how much innocent activity was recorded on these tapes.  Moreover, the Government would not have been able to comply with these minimization procedures and its obligations under Brady v. Maryland, 373 U.S. 83 (1963) absent such retention and dissemination to law enforcement because  foreign counterintelligence agents of the FBI are not responsible for determining whether information in the government's possession exculpates a defendant from criminal charges brought by the United States.  Accordingly, their dissemination of tapes containing information determined later to be irrelevant was in accord with the minimization procedures set forth in the FISA orders.

Because the Government retained all communications recorded during the FISA surveillance and produced these to Defendants in accordance with the FISA orders, Defendants constitutional rights to exculpatory materials were not violated by any minimization procedures employed in this

case.  All of Defendants' statutory and constitutional challenges to the minimization procedures, therefore, are denied.

Finally, Defendants contend that each FISA application might not contain the requisite certifications and, alternatively, such certifications may be clearly erroneous.[9]  A review of the FISA materials indicates that, in fact, each FISA application contained the requisite certifications as prescribed in section 1804(a)(7).  Each application contained, *inter alia*, a certification in which the certifying officer explained the basis for the designation of the sought-after information as "foreign intelligence information" and why such information could not reasonably be obtained through "normal investigative techniques."  See 50 U.S.C. §1804(a)(7)(A) and (c).  The certifying officer also explained in each certification that the "purpose" or the "significant purpose" of the surveillance was to obtain foreign intelligence information.[10]  See 50 U.S.C. § 1804(a)(7)(B).

Defendants Fariz and Al-Arian contend in the alternative that these certifications were clearly erroneous because the purpose of the surveillance was not to obtain foreign intelligence information, but to obtain evidence for a criminal investigation.  In support of their arguments, Defendants refer to the information sharing that took place between the foreign intelligence officers

---

[9]  As a corollary argument, Defendant Fariz contends that his constitutional rights were violated because the warrant and probable cause requirements of the Fourth Amendment apply to electronic surveillance that is conducted "for the purpose of foreign intelligence gathering, or. . . with the primary purpose of investigating criminal activity."  These arguments are foreclosed by the holding of the Foreign Intelligence Surveillance Court of Review ("FISCR") in In re Sealed Case, 310 F.3d 717, 746 (2002) (holding that "FISA, as amended is constitutional because the surveillances it authorizes are reasonable"), and by this Court's determination below that the primary purpose of the surveillance was not to compile evidence to be used for a criminal prosecution.

[10]  The required language in each certification depended on whether the FISA application was submitted before or after Congress amended the FISA statute through passage of the USA Patriot Act.  See Pub. L. No. 107-56, 115 Stat. 272 (Oct. 26, 2001) (amending section 1804(a)(7)(B) and 1823(a)(7)(B) of FISA by striking 'the purpose' and inserting 'a significant purpose').

conducting the surveillance and the law enforcement officers who conducted the criminal investigation. Defendants argue that this sharing of information was inconsistent with the Department of Justice's own "wall" procedures that were designed to preserve the integrity of the surveillance as a foreign intelligence investigation and, therefore, demonstrated that the purpose of the surveillance was to obtain evidence for a criminal investigation.

This Court concludes from its review of the FISA applications that the statement of the purpose of the surveillance contained in the certification was not "clearly erroneous." Contrary to Defendants' assertions, the FISA applications submitted before the USA Patriot Act amended the FISA statute demonstrated that the "primary purpose" of the surveillance was to obtain foreign intelligence information, see e.g., United States v. Badia, 827 F.2d 1458, 1464 (11th Cir. 1987), *cert. denied*, 485 U.S. 937; United States v. Johnson, 952 F.2d 565, 572 (1st Cir. 1991) (holding that the investigation of criminal activity cannot be the primary purpose of the [FISA] surveillance"), *cert. denied*, 506 U.S. 816 (1992).[11] The applications submitted after passage of the Patriot Act clearly established the acquisition of foreign intelligence information to be a "significant purpose" of the surveillance. See 50 U.S.C. §1804(a)(7)(B). Although Defendants contend that the real purpose of the surveillance was to obtain evidence for a criminal prosecution, there was no evidence in the applications demonstrating an attempt to conceal from the FISC any ongoing criminal investigation. Each FISA application identified whether a concurrent criminal investigation of the target was in progress, provided details of any criminal investigation, and adequately explained the foreign

---

[11] The reasoning behind the "primary purpose" standard developed by the federal appellate courts prior to the USA Patriot Act was called into question by the FISCR in In re Sealed Case. Id. at 721-728. The FISCR concluded, however, that the U.S. Patriot Act Amendments indicated "that Congress was keenly aware that this amendment relaxed a requirement that the government show that its primary purpose was other than criminal prosecution." Id. at 732.

intelligence purpose of the surveillance which was continuing regardless of any ongoing criminal investigation.

Defendants' reliance on the information sharing that was incompatible with the internal DOJ "wall" procedures in support of their argument is insufficient for several reasons. First, "the relevant purpose is that of those senior officials in the Executive Branch who have the responsibility of appraising the government's national security needs," see In re Sealed Case, 310 F.3d 717, 736 (For. Intel. Surv. Ct. of Rev. 2002), and is not to be derived from the actions of field agents conducting and/or supervising the surveillance. Second, the terms of the statute and its legislative history demonstrate that obtaining foreign intelligence information and using such information in a criminal investigation are not mutually exclusive. See 50 U.S.C. §1801(c) and (e) (defining "foreign intelligence information" to include evidence of "violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any state"); 50 U.S.C. §1801(h)(3) (authorizing the "retention and dissemination of information that is evidence of a crime. . . for law enforcement purposes"); H.R. Rep. No. 95-1283 at 49 (1978) ("[o]bviously, use of foreign intelligence information as evidence in a criminal trial is one way the Government can lawfully protect against clandestine intelligence activities, sabotage, and international terrorism") (internal citations omitted); S. Rep. No. 95-701 at 10-11 (1978) ("[i]ntelligence and criminal law enforcement tend to merge in this area. . . "). Third, the information sharing that was not in accord with DOJ internal "wall" procedures occurred only briefly, was immediately brought to the attention of the FISC in subsequent FISA applications, and was not repeated thereafter.

Notwithstanding any information sharing that took place inconsistent with the DOJ's internal wall procedures, the certifications and affidavits in each FISA application clearly

established that the surveillance was directed at uncovering information concerning the operations of a foreign power and its agents.  The fact that FISA surveillance led to a criminal investigation or continued once a criminal investigation commenced does not undermine the foreign intelligence purposes articulated in the application and certification.  See In re Sealed Case, 310 F.3d at 743 ("the government's primary purpose is to halt the espionage or terrorism efforts, and criminal prosecutions can be, and usually are, interrelated with other techniques used to frustrate a foreign power's efforts"); United States v. Truong Dinh Hung, 629 F.2d 908 (4th Cir. 1980) ("almost all foreign intelligence investigations are in part criminal investigations").  Because the acquisition of foreign intelligence information remained the primary or significant purpose of the FISA surveillance, Defendants' challenges to the certifications contained in each FISA application are denied.

## III. Conclusion

The remedies requested by Defendants in their Motions for disclosure of all FISA materials and suppression of all evidence obtained by the FISA surveillance operations is not warranted.  This Court has concluded that the legality of the FISA surveillance could be determined without resorting to the disclosure of information that ultimately could endanger the national security interests of the United States.  Although this Court was able to identify certain instances where the foreign counterintelligence agents conducting the electronic surveillance might have breached the terms of the FISA orders or made misrepresentations of fact, these occurrences were remote, relatively small in number, and did not demonstrate a flagrant disregard for the provisions of FISA.  Under these circumstances, Defendants are not entitled to the requested relief.  Instead, only evidence that was "unlawfully obtained or derived" should be suppressed.  See 50 U.S.C. § 1806(g).

It is therefore ORDERED and ADJUDGED that Defendants' motions to compel are **DENIED** and Defendants' motions to suppress are **GRANTED in part** and **DENIED in part** as set forth in this Order.

**DONE** and **ORDERED** in Tampa, Florida on April 19, 2005.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2003\03-cr-77  Al-Arian\Motns Suppress FISA.wpd