UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO.: 8:03-CR-77-T-30-TBM

SAMI AMIN AL-ARIAN,
SAMEEH TAHA HAMMOUDEH,
GHASSAN ZAYED BALLUT,
HATEM NAJI FARIZ

**UNITED STATES' RESPONSE IN OPPOSITION
TO DEFENDANT FARIZ'S MOTION
TO PRECLUDE TESTIMONY BY MATTHEW LEVITT**

The United States of America, by Paul I. Perez, United States Attorney, Middle District of Florida, respectfully submits the following response in opposition to defendant Fariz's motion to preclude testimony by Matthew Levitt (Doc. 1153).[1]

In accordance with Rule 16 and court orders, the United States provided the defendants with a notice and summary of the proposed testimony of Matthew A. Levitt as an expert on the Palestinian Islamic Jihad and in the field of terrorist financing. Defendant Fariz now seeks to exclude certain testimony by Mr. Levitt as irrelevant or inflammatory. As explained below, the defendant's motion is without merit and should be denied.

**ARGUMENT**

Defendant Fariz's motion contains a laundry list of various facts about which he argues Mr. Levitt should not be permitted to testify. We address each item in turn.

---

[1] Defendant Fariz's motion has been adopted by defendants Ballut (Doc. 1182), Al-Arian (Doc. 1180), and Hammoudeh (Doc. 1177).

A.      **Events, Statements or Incidents Occurring After February 19, 2003**

Defendant Fariz's request that all testimony regarding events taking place after February 19, 2003, the date of the initial indictment, be excluded is without merit and should be denied.

The United States is entitled to admit evidence regarding acts conducted in furtherance of the alleged conspiracies, even if such acts occur after the date of the Superseding Indictment. The Superseding Indictment plainly alleges that the conspiracies described in Counts One through Four continued at least through the date of the Superseding Indictment, September 21, 2004.[2] (See Doc. 636 at 9, 101, 104, and 116.) The fact that the Superseding Indictment was returned on September 21, 2004, is not talismatic of the termination of the alleged conspiracies. It just represents the date upon which the Grand Jury made its findings.

As courts have long acknowledged, a conspiracy does not necessarily end upon the arrest of some of the conspirators. See, e.g., United States v. Casamayor, 837 F.2d 1509, 1513 (11th Cir. 1988); United States v. DeLeon, 641 F.2d 330, 334 (5th Cir. 1981) (quoting United States v. Papia, 560 F.2d 827, 835 (7th Cir. 1977) ("It is clear that a co-conspirator's arrest does not in itself terminate a conspiracy as a matter of law, for the

---

[2]Defendant Fariz's dogged reliance on the date of the last alleged overt act to support his argument is misplaced. It is well established that the United States may adduce evidence of, and evidence relating to, acts or events in furtherance of a conspiracy that are not specifically described in the indictment. See United States v. Janati, 374 F.3d 263, 270 (4th Cir. 2004); United States v. Quesada, 512 F.2d 1043, 1046 (5th Cir. 1975) (quoting United States v. Perez, 489 F.2d 51, 70 (5th Cir. 1973) ("We have held before that the government is not limited to overt acts pleaded in proving a conspiracy. It may show other acts of the conspirators occurring during the life of the conspiracy.")).

conspirators remain fully capable of carrying out their purpose, notwithstanding the arrest of one of their cohorts . . .")). Nor is the arrest or incarceration of a conspirator by itself sufficient to constitute his withdrawal from the conspiracy or to signal the end of his role in the ongoing conspiracy.[3] See United States v. Melton, 131 F.3d 1400, 1405 (10th Cir. 1997); United States v. Gonzalez, 940 F.2d 1413, 1428 (11th Cir. 1991) ("[N]either arrest nor incarceration automatically triggers withdrawal from a conspiracy."). Indeed, the Superseding Indictment alleges as a racketeering activity "acts indictable under Title 18, United States Code, Section 1503 [obstruction of justice]," based at least in part on the conduct alleged in Count Fifty-Three. (Doc. 636 at 11; see also Doc. 636 at 153, ¶ 43(324) (incorporating by reference as an overt act under Count One allegations regarding defendant Al-Arian's obstruction of justice at the bond hearing in this case).)

In this case, the PIJ Enterprise still existed after February 19, 2003 and September 21, 2004, and many co-conspirators are still at large to this day. In such circumstances, courts have admitted evidence of co-conspirator activities that were undertaken after the arrest of the defendant. See e.g., United States v. Gomez, 927 F.2d 1530, 1535 (11th Cir. 1991) (affirming the admission of evidence of a co-conspirator's activities that were undertaken two months after the arrest of the defendant because it was linked with the chain of events surrounding the crimes charged). Thus, acts committed by co-conspirators after the return of the Superseding Indictment may be relevant and admissible in this case.

---

[3] Thus, defendant Fariz's simplistic assertion that "Mr. Fariz's role, if any, in the alleged PIJ conspiracy clearly ended after the issuance of the indictment and his subsequent arrest" is not consistent with applicable legal precedent. (Doc. 1153 at 3.)

3

Furthermore, counsel for defendant Fariz himself in his opening statement referred to acts occurring after February 19, 2003; namely, the designation of the Elehssan (Al Ihsan) Society in May 2005. The Court will recall that counsel for defendant Fariz stated in his opening statement that the Elehssan Society (the organization to which defendant Fariz contributed funds in 2002) was not designated as a Specially Designated Terrorist until May 2005. Defendant's counsel then used the date of designation of the Elehssan Society to imply that United States lacked evidence to prove Counts Three, Twenty-Two through Thirty-Two and Thirty-Three through Forty-Three. His statement to the jury regarding the May 2005 date of the designation of the Elehssan Society placed the recent designation at issue and made it relevant to the case. Because the designation of a terrorist organization is the type of information and material that an expert in the field of terrorist financing would rely upon, it is therefore appropriate for Mr. Levitt to testify about the designation of the Elehssan Society even though it occurred after the date of return of the Superseding Indictment.

### B. Miscellaneous Evidence of Attacks and Statements

The United States does not intend to introduce testimony by Mr. Levitt regarding: (1) a July 2003 decision of the Palestinian Authority to outlaw "illegal organizations that encourage violence and arouse the public to bring about change through force;" (2) a statement in 2005 of Muhammad al-Hindi rejecting a cease-fire with Israel; (3) attacks by the PIJ in August 2003; (4) attacks by the PIJ on October 4, 2003 and February 25, 2005; (5) a quotation of a statement regarding "an expansion of the circle of resistance" by a HAMAS leader in October 2003; (6) a preliminary deal between HAMAS and PIJ to merge their military wings in late 2003; or (7) a quotation of statements made by a

Hizballah leader in December 2003. Thus, defendant Fariz's motion with respect to these six items is moot.

### C. Hizballah

Defendant Fariz's request that Mr. Levitt be precluded from commenting upon Hizballah is similarly unsupported and should be denied.

As defendant Fariz concedes, Hizballah is referenced several times in the Superseding Indictment. The Superseding Indictment alleges as a manner and mean of the RICO conspiracy stated in Count One that: "The enterprise members would and did work and associate with other terrorist organizations, including, among others HAMAS and Hizballah, to accomplish acts of violence that were mutually beneficial." (Doc. 636 at 15 ¶ 36.) To support this allegation, therefore, the United States should be permitted to introduce evidence to explain what Hizballah is and its relationship to the PIJ.[4]

In addition, Hizballah is referenced in the overt act section of the Superseding Indictment. For example, Overt Act 237 describes a meeting attended by Shallah, HAMAS and Hizballah members at which Shallah represented the PIJ and gave a speech on behalf of the PIJ. (Id. at 77-78 at ¶ 43(237).) The United States further intends to introduce a videotape regarding Hizballah that was seized from defendant Al-Arian's residence in 1995. Because the existence and nature of Hizballah is outside the purview of an average juror, the United States should be allowed to introduce

---

[4]The United States does not intend to elicit testimony from Mr. Levitt about Hassan Nasrallah or Imad Mughniyeh.

evidence identifying Hizballah and explaining its activities in order for the jury to understand these overt acts.

### D. HAMAS

Likewise, expert testimony regarding HAMAS is relevant to the case. The defendants frequently discuss HAMAS and its various leaders, including Mousa Abu Marzook, Khaled Mishal, Salah Shehada, Sheikh Yassin and Sheikh Rantisi, in recorded communications that the United States intends to introduce at trial. For example, defendant Al-Arian received a facsimile from Fathi Shiqaqi discussing a suicide attack in Afula that the PIJ accomplished with the assistance of HAMAS. (Doc. 636 at 44 ¶ 43(96).) A few days later, defendant Al-Arian and co-conspirator Nafi discuss that the perpetrator of the suicide attack at Afula was from the PIJ while the car and bomb were from HAMAS. (Id. at 45 ¶ 99.)

Defendant Fariz himself discusses HAMAS and its leaders in communications alleged in the Superseding Indictment that the United States intends to introduce at trial. In the communication described in Overt Act 299, defendant Fariz discusses with defendant Ballut a conversation that he had with Naim Nasser Bulbol about the death of HAMAS leader Salah Shehada, the effect his death would have on HAMAS and Shehada's relationship with Ramadan Shallah. (Id. at 93 ¶ 43(299).) Similarly, in the communication described in Overt Act 322, defendant Fariz complains to a magazine reporter that an article about a PIJ attack in Hebron improperly attributed the attack to both HAMAS and the PIJ, rather than attributing it just to the PIJ. (Id. at 99 ¶ 43(322).)

For these reasons, HAMAS is relevant to the case. Because the existence and nature of HAMAS is outside the purview of an average juror, the United States should

be permitted to introduce evidence identifying HAMAS and explaining its activities in order for the jury to understand these overt acts.[5]

### E. Abdullah Azzam

Defendant Fariz next seeks to preclude as irrelevant and prejudicial testimony regarding Abdullah Azzam, the co-founder of the Afghan Services Bureau. This contention is likewise without merit.

First, Azzam is relevant to the case. The evidence will show that Azzam was invited to an ICP conference as a prominent scholar and defendant Al-Arian references him on a video from an ICP conference.

Second, contrary to defendant Fariz's insinuation, the Court's ruling on the defendant's motion in limine to exclude evidence did not encompass Azzam. Moreover, the Court held that references to Al Qaeda or Osama Bin Laden could be admitted if the defendants discuss them in recorded communications, but the Court precluded Mr. Levitt from comparing the PIJ to Al Qaeda. Here, defendant Al-Arian mentions Azzam as someone who he had invited to participate at an ICP conference that he organized. The United States, therefore, should be permitted to introduce testimony simply to explain who Azzam is, without reference to Osama bin Laden and Al-Qaeda.

---

[5]The defendants and co-conspirators also discuss in intercepted conversations and facsimiles other violent organizations including Fatah and the Abu Nidal Organization. Because the existence and nature of such groups is likely outside the purview of the average juror, the United States should be permitted to introduce expert testimony regarding these and other terrorist organizations discussed by the defendants and co-conspirators.

7

### F. Sheikh Yousef Qardawi

The United States does not intend to introduce evidence regarding Sheikh Yousef Qardawi unless the defendants elicit evidence regarding him during the course of the trial.

### G. Sheikh Omar Bakri Mohammed

The United States does not intend to introduce evidence specifically referencing Sheikh Omar Bakri Mohammad.

### H. January 2005 Freedom House Report

The United States does not intend to introduce evidence regarding the January 2005 Freedom House Report.

### I. Saddam Hussein

Defendant Fariz's motion regarding Hussein is moot since the Court has already ruled on this issue. The United States notes, however, that the Court's ruling did not entirely preclude evidence regarding Hussein, but rather permitted the United States to introduce intercepted communications in which the defendants discuss Hussein and to comment upon such communications.

### J. Halhoul Charity Committee and Holy Land Foundation for Relief and Development

Defendant Fariz argues that testimony regarding these two organizations should be excluded because they are not referenced in the Superseding Indictment. This argument is misplaced and should be rejected.

With respect to the Holy Land Foundation for Relief and Development ("HLFRD"), the defendants discuss the HLFRD, and people associated with it, in

8

recorded communications that the United States intends to introduce at trial. In addition, the evidence will show that after HLFRD was designated as a Specially Designated Terrorist in September 2001, the defendants, who knew about the designation, became even more security-conscious about their own activities. Because the nature of HLFRD and its activities as a front group for HAMAS is beyond the purview of the average juror, the United States should be permitted to introduce testimony about HLFRD in order for the jury to understand the communications.

Likewise, the United States intends to introduce evidence of the defendants' extensive contacts with other fund-raising organizations. At this time, we cannot confirm whether the Halhoul Charity Committee is one of the organizations with which the evidence will show the defendants had contact or discuss, but if it is, the United States should be permitted to introduce evidence about the existence and nature of the organization.

### K. PIJ Dawa Organizations and the Elehssan Society

Defendant Fariz argues that Mr. Levitt's testimony regarding the PIJ's dawa organizations and the Elehssan Society is inadmissible under Rule 703 because the sources upon which Mr. Levitt relies is inadmissible hearsay and unreliable. This argument should be rejected.

First, defendant Fariz presents no support for his claim that the sources are unreliable. He asserts that the sources are unreliable because they "all hew to the same line," that is, the sources must be unreliable simply because they are from Israel. (Doc. 1153 at 11.) Mr. Levitt will testify that the sources upon which he relied are of the type that are reasonably relied upon by experts in his field. Moreover, Mr. Levitt will

testify that he at least partially based his testimony about the PIJ's dawa organizations and the Elehssan Society on evidence in this case, including intercepted conversations and facsimiles. He will also testify that he constantly vets this information against other sources. Mr. Fariz's unsupported assumption that Israeli sources of information are presumptively unreliable is insufficient to provide a basis for excluding Mr. Levitt's testimony.

In any event, to the extent that defendant Fariz wishes to challenge whether experts reasonably rely on such materials, he can do so through cross examination or in voir dire. The Court should not make a determination regarding whether experts in the field of terrorist financing would reasonably rely on such sources based on defendant Fariz's unsupported assertions and in a factual vacuum on a motion in limine.

The admissibility of the underlying sources is irrelevant to the Court's determination. Rule 703 plainly permits an expert to base opinion testimony upon facts or data that are not admissible at trial, as long as those facts or data are of a type reasonably relied upon by experts in the field. Fed. R. Evid. 703; see also Advisory Committee Notes, Rule 702 ("When an expert relies on inadmissible information, Rule 703 requires the trial court to determine whether that information is of a type reasonably relied on by other experts in the field. If so, the expert can rely on the information in reaching an opinion."). Since Mr. Levitt does not intend to testify directly from the materials, the independent admissibility of the source materials therefore is not pertinent to the admissibility of Mr. Levitt's opinion testimony as long as the materials are of a type reasonably relied upon by experts in his field.

### L.     Information Derived From Israeli Military Press Releases

Defendant Fariz argues that these press releases constitute inadmissible hearsay and are unreliable.  To the extent that defendant Fariz is complaining that these press releases themselves are inadmissible, his motion is moot because the United States does not intend to introduce these press releases into evidence.  To the extent that he seeks to preclude Mr. Levitt from using these press releases as part of the facts or data underlying his opinion, this argument is without merit.

As explained above, the fact that the press releases are themselves hearsay is irrelevant since Rule 703 plainly permits an expert to base opinion testimony upon facts or data that are not admissible at trial, as long as those facts or data are of a type reasonably relied upon by experts in the field.  Fed. R. Evid. 703.  If necessary, Mr. Levitt may testify that these press releases and the information they contain are of the type that an expert in the field of Middle Eastern terrorism may rely upon.  Therefore, pursuant to Rule 702 and 703, the press releases may properly form the basis of Mr. Levitt's testimony.

Just as with respect to his argument about PIJ dawa organizations and the Elehssan Society, defendant Fariz presents no support for his claim that the press releases are unreliable other than his bald assumption that anything produced by Israeli authorities is *per se* biased.  (Doc. 1153 at 10.)  Mr. Levitt will testify that the sources upon which he relied are of the type that are reasonably relied upon by experts in his field.  He will also testify that he constantly vets this information against other sources.  To the extent that defendant Fariz wishes to challenge whether experts in Mr. Levitt's

11

field reasonably rely on these types of materials, he can do so through cross examination or in voir dire. The Court should not make a determination regarding whether experts in the field of terrorist financing would reasonably rely on such sources based on defendant Fariz's unsupported assertions and in a factual vacuum on a motion in limine.

### M.  Specific Intent

In the last section of his motion, defendant Fariz requests the Court preclude testimony of "whether or not Mr. Fariz had the specific intent to further the unlawful activities of the PIJ." (Id. at 12.) The United States does not intend to elicit testimony from Mr. Levitt whether the defendants had the mental state or condition constituting an element of the crime charged. See Fed. R. Evid. 704(b).

Testimony regarding economic jihad, however, is both relevant and admissible expert testimony. Moreover, Mr. Levitt may properly apply general principles and information about economic jihad to the PIJ and the specific facts of this case. As Rule 704(a) explains, opinion testimony that is otherwise admissible "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact," except for the ultimate issue of mental state or condition. See also Advisory Committee Notes to Rule 702 ("It will continue to be permissible [under Rule 702] for the experts to take the further step of suggesting the inference which should be drawn from applying the specialized knowledge to the facts.").

**CONCLUSION**

For the foregoing reasons, defendant Fariz's motion should be denied.

                Respectfully submitted,

                PAUL I. PEREZ
                United States Attorney


By:   */s Cherie L. Krigsman*
      Cherie L. Krigsman
      Trial Attorney, U.S. Department of Justice
      United States Attorney No. 089
      400 North Tampa Street, Suite 3200
      Tampa, Florida  33602
      Telephone:   (813) 274-6156
      Facsimile:   (813) 274-6108
      E-mail:   Cherie.Krigsman@usdoj.gov


By:   */s Alexis L. Collins*
      Alexis L. Collins
      Trial Attorney, U.S. Department of Justice
      United States Attorney No. 089
      400 North Tampa Street, Suite 3200
      Tampa, Florida  33602
      Telephone:   (813) 274-6130
      Facsimile:   (813) 274-6108
      E-mail:   Alexis.Collins3@usdoj.gov

**U.S. v. Sami Amin Al-Arian, et al.**    Case No. 8:03-CR-77-T-30-TBM

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2005, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

    Kevin T. Beck
    Stephen N. Bernstein
    M. Allison Guagliardo
    Bruce G. Howie
    William B. Moffitt
    Linda G. Moreno
    Wadie E. Said

/s Cherie L. Krigsman
Cherie L. Krigsman
Trial Attorney, U.S. Department of Justice
United States Attorney No. 089
400 North Tampa Street, Suite 3200
Tampa, Florida  33602
Telephone:   (813) 274-6000
Facsimile:   (813) 274-6108
E-mail:      Cherie.Krigsman@usdoj.gov

/s Alexis L. Collins
Alexis L. Collins
Trial Attorney, U.S. Department of Justice
United States Attorney No. 089
400 North Tampa Street, Suite 3200
Tampa, Florida  33602
Telephone:   (813) 274-6130
Facsimile:   (813) 274-6108
E-mail:      Alexis.Collins3@usdoj.gov