IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,    )
                             )
        Plaintiff,         )
                             )
                             ) Case No.
   vs.                       ) 8:03-CR-00077-T-36JSS-1
                             )
                             )
SAMI AMIN AL-ARIAN,          )
                             )
        Defendant.         )

_____

**MOTION HEARING
BEFORE THE HONORABLE JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE**

NOVEMBER 18, 2016
10:02 A.M.
TAMPA, FLORIDA
_____

Proceedings transcribed via courtroom digital audio recording by transcriptionist using computer-aided transcription.
_____

**DAVID J. COLLIER, RMR, CRR**
FEDERAL OFFICIAL COURT REPORTER
801 NORTH FLORIDA AVENUE, 7TH FLOOR
TAMPA, FLORIDA 33602

**APPEARANCES:**

For the Government:   *Robert Mosakowski*
                      *Walter Furr*
                      Assistant U.S. Attorney
                      400 N. Tampa Street, Suite 3200
                      Tampa, Florida  33602
                      (813) 274-6000


For the Defendant:    *Charles D. Swift*
                      833 E. Arapaho Road, Suite 102
                      Richardson, Texas  75081
                      (972) 914-2507

```
 1                      P R O C E E D I N G S
 2                         - - - o0o - - -
 3            THE COURT:  Good morning, everyone.  We're here in
 4   the case of United States versus Sami Amin Al-Arian, and
 5   it's Case 8:03-CR-77.  We're here -- let me actually get the
 6   lawyers to put your appearances on the record.
 7            MR. MOSAKOWSKI:  Good morning, Your Honor.
 8   Assistant United States Attorney Bob Mosakowski and
 9   Walter Furr for the United States.
10            THE CLERK:  Good morning to both of you.
11            MR. SWIFT:  Good morning, Your Honor.
12   Charles Swift on behalf of Mr. Al-Arian.
13            THE COURT:  Good morning to you, Mr. Swift.
14            MR. SWIFT:  Thank you.
15            THE COURT:  Now, we are here on a continued
16   hearing, and I'd asked the Government to brief the issue
17   further related to the retention of documents and the
18   Government has done so and, Mr. Swift, you have submitted a
19   reply which I've received --
20            MR. SWIFT:  Yes, ma'am.
21            THE COURT:  -- on behalf of Mr. Al-Arian, so
22   I would like to, if we could, have the Government make any
23   additional arguments that it would like related to the legal
24   basis for retaining the property, and then I'll give a
25   chance to reply.
```

|   |   |
|---|---|
| 1 | MR. MOSAKOWSKI: Your Honor, just to reiterate, we |
| 2 | still have an indicted case with five individuals that are |
| 3 | fugitives, three of them charged in the same conspiracy to |
| 4 | which Mr. Al-Arian pled guilty. Criminal proceedings in |
| 5 | this case have not finished, that's the first step, it's |
| 6 | still ongoing. Individuals are -- several of them are high |
| 7 | value targets, let's put it that way, and it's a situation |
| 8 | that the United States Government would prosecute should we |
| 9 | get them into custody. |
| 10 | Under the circumstances, the documents have |
| 11 | evidentiary value and we need them, and I don't believe |
| 12 | we're at the stage yet where the burden shifts, we're still |
| 13 | with -- criminal proceedings have not abated at this point. |
| 14 | THE COURT: All right. And you received that |
| 15 | response from Mr. Al-Arian's counsel, Mr. Swift. Do you |
| 16 | have any additional comments related to his comments in that |
| 17 | pleading? |
| 18 | MR. MOSAKOWSKI: Well, generally, Your Honor, A, |
| 19 | we are taking steps to recover these individuals. I'd |
| 20 | rather not go into great detail on the record about some of |
| 21 | this, some of the steps the Government has taken are |
| 22 | classified, but I can represent to the Court that the |
| 23 | United States is interested and has attempted to obtain the |
| 24 | presence of these individuals. |
| 25 | With regard to the second aspect of certain |

documents at the school that -- I can say that the documents that were found in Mr. Al-Arian's office, the Government is -- as far as our production, I'm pretty sure he's going to get almost all of them back, if not all of them.

With regard to the other documents found in the school, I believe that the argument from Mr. Swift -- I think he takes an expansive view on the phrase "possessory interest." The cases he cites -- we have an unpublished Pennsylvania District Court case. The cases they cite in that case for authority deal with search and seizure and standing under the Fourth Amendment and not Rule 41.

His argument basically is if I have a reasonable expectation of privacy over an area then I'm entitled to get all the property taken from there back under Rule 41.

If you take that to the furthest extent, you get a situation where if Mr. Furr and I are roommates, he steals a diamond, keeps it in our apartment, the Government comes in and obtains it by search warrant, Mr. Furr is prosecuted, the case is done, I go in and say, well, I had a reasonable expectation of privacy, I'd like that jewel under Rule 41. It doesn't work that way. The case law -- there has to be a possessory interest, it doesn't have to be exactly legal title, but I believe it requires more than just to be having an expectation of privacy over the area to be able to make

1   that claim.
2          In this situation Mr. Al-Arian, according to
3   Mr. Swift, used to be a Board member of the school, the
4   school is still in existence, so he's coming in now and
5   saying, I get those things because I used to be a
6   Board member. Under the circumstances, Your Honor, I don't
7   believe he's entitled to that.
8          As I said, this is still a little premature, I'm
9   not sure it's ripe, because we're still going over these
10  documents, and it may be that we'll end up giving copies of
11  those records to him as well anyway. At this point there is
12  a concern, we're talking about personnel records, PII.
13  The Court knows from taking guilty pleas in this that PII is
14  pretty valuable at this point and the Government is a little
15  concerned about just putting it out on the street.
16         Under all the circumstances, Your Honor, I don't
17  think -- as I said, Your Honor, I think this situation may
18  be resolved as far as the way things are going. We made one
19  production since our telephonic hearing, we were supposed to
20  set -- provide information on I guess Wednesday, there was a
21  miscommunication, it's resolved, the second series of our
22  rolling production will be made Tuesday of next week, we
23  anticipate already making a production in December, and the
24  issue will certainly be narrowed. I don't believe it's ripe
25  yet, and in any event it will be narrowed as we go along.

1           THE COURT: And you contend it is not ripe
2 because --
3           MR. MOSAKOWSKI: We may as well -- we may
4 produce -- right now we're talking a voluminous amount of
5 records, and we're turning records over. It could very well
6 be in two months or three months we're talking five records,
7 20 records, I don't know at this point, Your Honor. It may
8 be we give them all of them or copies of them at that point,
9 but I kind of think -- well, I suspect that at the very end
10 there will be an issue about his possessory interest in some
11 of those other documents found at the school for sure.
12           I believe they also asked for records obtained in
13 2007. I believe we put in a footnote on page 4 of our
14 response that those records were to be returned to the
15 United States pursuant to court order in this case.
16           I don't know whether he -- the defendant --
17 whether Mr. Swift is still seeking those records, but we're
18 going to oppose that. We're talking FISA recordings and
19 other documents that were to be returned to the
20 United States, we took them and we don't plan on giving
21 those back, but under the circumstances -- but I'm not sure
22 whether that's still part of the request from, I guess, the
23 defense or the movant in this case.
24           THE COURT: Let me ask you, Mr. Mosakowski:
25 To some extent it sounds like you think that the motion

 1 should be granted in part, in the sense that you are
 2 returning voluntarily on a rolling basis some of the
 3 documents --
 4         MR. MOSAKOWSKI: Your Honor --
 5         THE COURT: -- and that it should be denied in
 6 part because you think some of those documents that you need
 7 for potential prosecution you should be entitled to keep.
 8         MR. MOSAKOWSKI: It's my understanding,
 9 Your Honor, that we were planning on returning documents and
10 then the Rule 41 was filed to sort of move us along. There
11 was a delay or a gap while Mr. Furr was in trial.
12         Under the circumstances I think the motion should
13 be -- I under -- my recommendation is it be denied without
14 prejudice and in the next three or four months be brought
15 back and make a determination. It very well could be moot
16 as to almost all the records.
17         THE COURT: And I think, if I recall from the last
18 hearing that we had, you were mentioning that there was a
19 rolling production and that you were producing those
20 documents and that you -- the timeline that you anticipated
21 finishing that production, was it in 2017; is that correct?
22         MR. MOSAKOWSKI: Yes, ma'am. Once again, it's
23 November now, we're doing the second series of our
24 production, we'll do another series in December, but -- and
25 we're making a -- we're making very good progress,

```
 1  Your Honor.
 2          THE COURT:  Now, are those the originals or are
 3  they copies?
 4          MR. MOSAKOWSKI:  Some originals, Your Honor.
 5  A lot of them are copies.
 6          THE COURT:  So you do --
 7          MR. MOSAKOWSKI:  Obviously we need to have the
 8  original -- the originals make it easier at trial should
 9  we -- or when and if we obtain the other defendants, the
10  fugitives.
11          THE COURT:  So you do intend to keep some of the
12  documents.
13          MR. MOSAKOWSKI:  Yes, ma'am.
14          THE COURT:  All right.  Okay.
15          Let me hear from Mr. Swift.
16          MR. SWIFT:  On December 7th -- and I looked this
17  up yesterday.  On December 7th, the day after the Al-Arian
18  trial ended in two thousand -- 11 years ago, the Government
19  said, and I quote, Your Honor, in the press, the Government
20  said:  We will determine whether to seek extradition of the
21  remaining defendants quickly.  11 years later and they have
22  done nothing.
23          What they are doing here is not so much giving
24  this Court reasons as excuses on the production of the
25  documents.  Mr. Al-Arian is entitled to have his documents
```

```
 1   back.  As we set out in the case law, you know, there's a
 2   presumption on the criminal trial that they're going to use
 3   them.  They've used up that presumption.  We're 11 years
 4   from now, and they don't know -- I want the Court to think
 5   about this.  They've had the case for almost 15 years.  At
 6   11 years -- and they were investigating long before that.
 7   At 11 years after the close of the case they don't know
 8   which documents they need, they need to go through them.
 9   That's not the idea of a vigorous law enforcement, that's
10   hoarders.
11            What they are doing in the process of this part is
12   continuing on it.  What we say to the Court -- and I'm
13   willing to take it on a rolling basis, quite frankly.
14   There's a ton.  The easiest for us would be to pick it all
15   up, but I'm willing to go if there were cooperation, and
16   I would point out to this Court that although the Government
17   would have you believe that somehow we were the
18   uncooperative parties here and we just jumped the gun
19   filing a lawsuit, we wrote to them repeatedly, repeatedly
20   asking, and it was only after not hearing for a year that we
21   filed the lawsuit.
22            So my part on the Government's position that this
23   should be dismissed, hardly, because my feeling is as soon
24   as it's dismissed the Government is done, at least based on
25   their past records on the part.
```

                    The other part is if the Government is going to
withhold a document at this point, they need to give this
Court more than a "well, we might need it in a prosecution"
reason.  They need to set out for each document why they're
withholding it specifically, why they're not turning over
the documents.
                    With regard to the possessory interest, I wrote a
reply to this, the Government would have you believe -- they
use a really bad analogy with the diamond ring.  Instead
they say, you know what, officials at a school, they
shouldn't be trusted with the Social Security information or
other information on their employees.  No.  No.  No.  No.
They should never have those.  So we, the Government, should
actually go in and blank those out, because they shouldn't
have them.  Because in that diamond ring example, nobody
should have the diamond ring, but for that example to hold
true on a possessory interest, then the officials at the
school should have no interest in these records.
                    Mr. Al-Arian was an official at that school.  The
easy thing for him is to obtain those records to return them
to the custodians of the school.
                    THE COURT:  He's not an official at that school
anymore; is that right?
                    MR. SWIFT:  That's true, Your Honor, but he's also
the only person with standing in this case.  So the

1   Government sits there and says, well, we'll hold -- they
2   have made no effort -- I'm happy.  The Government agrees to
3   return all the records to the school, we'll moot it out.
4   I'm just trying to get them back for Mr. Al-Arian's school,
5   a school that's still interested in having its records
6   11 years later returned to it.  We set out in the part --
7   we're happy with that, but in this process that somehow the
8   Government sits there and says, yeah, we'll just hang onto
9   the schools records ad infinitum -- makes no sense.
10          And I point out that under the case law
11  Mr. Al-Arian had a sufficient possessory interest at the
12  time that it's seized to seek its return.
13          Now, we're looking at -- we would point to the
14  Court that we're looking at the time of the seizure, and
15  we're going to return to that on the process, and certainly
16  he was an official there, he had them, they were seized at
17  his office, and other records at that school where he was
18  working as they related to him and to the persons who worked
19  with him.
20          So in that sense we believe that all of the
21  records are within the scope to be returned to Mr. Al-Arian.
22  We do not believe that the Government has given an
23  articulable basis which we view on the part here is -- they
24  have to do more than a broad part.  Otherwise, Your Honor,
25  if we permit this, here is what it becomes:  You're

1   acquitted.  You're acquitted of crime.  You're acquitted, no
2   forfeitures are ordered, but the Government can hold your
3   stuff forever, because it's always possible that someone
4   else will be prosecuted.  It's always possible.  And in
5   these type of cases the Government accomplishes a forfeiture
6   order without a forfeiture.  At what point does it not
7   become a forfeiture?  If the Court at this point denies the
8   order, then is it not simply a forfeiture?  Because the
9   Government will keep it the rest of his life.  It becomes a
10  de facto forfeit.
11          Thank you, Your Honor.
12          THE COURT:  Is there any opposition to the rolling
13  return that they've agreed to provide by 2017?
14          MR. SWIFT:  There is no opposition, Your Honor.
15  As I said, I'm fine with them turning it over on the period
16  of time.  What I don't want is this Court to approve their
17  ability to decide what they're going to turn over and what
18  they're not going to turn over.  If they don't want to turn
19  something over, I believe they need to come back here and
20  tell -- first off, tell us.  I'm a reasonable person, I feel
21  like.  If I understand it and I understand the rules that
22  they are -- if they truly need this document to potentially
23  pursue a prosecution, then I am not going to -- I'll explain
24  it to my client in the process and not proceed further and
25  waste the Court's time; but if I don't understand the reason

1  then perhaps I'm going to ask this Court to take a look at
2  why they are withholding that document or series of
3  documents.
4  　　　　With regards to the FISA tapes, I agree those are
5  the property of the United States, and if they were put into
6  inventory logs or some part on it, inventoried, I don't
7  believe that -- I agree that any tape that's -- the
8  conversations that are seized as part of FISA then turned
9  over as part of discovery are always returnable to the
10 Government and we don't seek the return.
11 　　　　THE COURT:  So if they're making a rolling basis,
12 return of the documents on a rolling basis, and you'd have
13 the documents by 2017, would you then know which documents,
14 if any, that you didn't have at that time?
15 　　　　MR. SWIFT:  We're keeping track of it.  We have a
16 list on the part.  Our part is -- and I would love to
17 address individual documents.  The Government at this point
18 has said they might turn over almost every document, so,
19 you know, it's -- yes is the answer.  I believe that -- I
20 would ask this Court to hold this motion -- my suggestion is
21 to hold this motion under advisement for a period of
22 six months with a status conference where we come back to
23 you and tell you at that time whether -- you know, given the
24 volume, I think we probably will finish in six months but we
25 might not all the way through, and I'm not going to rush in

```
 1   here because they have five more boxes of documents they're
 2   going through.  I'm gratified they're going through them in
 3   the process.
 4            So what I would suggest to the Court is
 5   six months, a status conference, we re-meet on this motion,
 6   and at that point -- and we'll advise the Court if we still
 7   have continuing going on, we'll just postpone that, and then
 8   a determination as to whether -- when they've completed
 9   their rolling production, whether we, the plaintiffs,
10   believe -- or the defendants, the movants in this motion,
11   believe that the motion is moot, at which point if I do
12   I will withdraw, and if I don't I will continue, and I would
13   think that we would want to brief particularly on documents
14   or parts that are being withheld, because now we can have
15   more than a theoretical discussion on whether this is
16   necessary for a prosecution.
17            THE COURT:  Very well.  Thank you so much.
18            Mr. Mosakowski, anything additional?
19            MR. MOSAKOWSKI:  No, Your Honor.
20            THE COURT:  All right.  I'm going to take this
21   matter under advisement and I'll issue an order once I reach
22   a decision.  Thank you very much.
23                          - - - - -
24            (Proceedings concluded at 10:20 a.m.)
25
```

16

C E R T I F I C A T E

    This is to certify that the foregoing transcript of proceedings taken in a motion hearing in the United States District Court is a true and accurate transcript of the proceedings taken by me in machine shorthand and transcribed by computer under my supervision, this the 5th day of May, 2017.


                            /S/ DAVID J. COLLIER


                            DAVID J. COLLIER
                            OFFICIAL COURT REPORTER